UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HECTOR NUNEZ,<br><br>Defendant | CRIMINAL No. 1:24-CR-10414 |

GOVERNMENT'S SENTENCING MEMORANDUM

For over two years, Defendant Hector Nunez laundered or helped launder approximately $688,650 of narcotics proceeds. When asked by an undercover investigator what type of "merchandise" he and his associates were working with, Nunez stated "perico" common slang for cocaine. PSR ¶ 12. In addition, Nunez said that he and his associates were selling a "kilo" for "23" a reference to selling a kilogram of cocaine for $23,000. *Id.* For his conduct, the Defendant was indicted on one count of money laundering conspiracy (Count One) and three counts of money laundering, aiding and abetting (Counts Two-Four). On March 21, 2026, the Defendant pleaded guilty to each count. ECF No. 41. As detailed below, the Defendant's guidelines sentencing range ("GSR") is 57 to 71 months. The government recommends a sentence of 57 months, which is sufficient but not greater than necessary to meet the goals of sentencing. *See* 18 U.S.C. § 3553(a).

## I. Calculation of the GSR

### a. The defendant's GSR is 57 to 71 months.

The government agrees with Probation's laundered funds calculation. PSR ¶ 28. Because the laundered funds equaled more than $550,000, but less than $1,500,000, the base offense level is 22. PSR ¶ 27. Probation also determined that the offense level is increased by 6 because the

Defendant knew or believed that the laundered funds were the proceeds of or were intended to promote an offense involving drug trafficking. PSR ¶ 28.

The government agrees that the base offense level is increased by 2 levels because the Defendant was convicted under 18 U.S.C. § 1956. PSR ¶ 29. The government further agrees that the base offense level is decreased (i) by 3 levels due to the Defendant's acceptance of responsibility, PSR ¶¶ 34-35; and (ii) by 2 levels because the Defendant is a zero-point offender, PSR ¶ 36. Accordingly, the total offense level is 25.

Further, because the Defendant is a zero-point offender, his criminal history category is I, for a GSR of 57 to 71 months.

## II. <u>The Government's Recommendation</u>

The government is recommending a sentence of 57 months, which represents the low-end of the sentencing guidelines range. This sentence appropriately reflects the seriousness of the Defendant's conduct and the need for punishment and general deterrence.

### 1. Characteristics of the Defendant

The Defendant is a 40-year-old man with no criminal history. PSR, ¶¶ 39-46. As is set forth in the PSR, the Defendant "always lived a beautiful childhood" and denied experiencing any sexual, verbal, or physical abuse. PSR, ¶¶ 53-54. The Defendant has four children that he cares for and one child who resides with her mother. PSR, ¶ 60-61. The Defendant is in relatively good health, though he suffers from diabetes. PSR, ¶ 69. The Defendant is an educated man, having earned the equivalent of a high school diploma while living in the Dominican Republic. PSR, ¶ 85. According to the Defendant, in the years leading up to his arrest, his use of cocaine was "chronic" and he also drank heavily. PSR, ¶ 78. The Defendant noted that during this time period, he was spending an average of "300 [*sic*] to $400 per week on cocaine. *Id.*

**2. Nature of the Offense**

The Defendant participated in a money laundering conspiracy that moved significant quantities of money. The Defendant laundered or helped launder over $688,650 of drug proceeds. In addition, the Defendant knew that the proceeds were from the sale of cocaine, and he knew the drug trafficking organization's price for a kilogram of cocaine. This conduct demonstrates the Defendant's knowledge of the scope of the conspiracy, from his knowledge of the distribution of the drugs, to the subsequent laundering of the drug proceeds. He was also trusted by other drug traffickers with the money—the ultimate goal of the conspiracy.

Cocaine is – "an intense, euphoria-producing drug with strong addictive potential."[1] The potent stimulant can have extremely damaging effects on users, including severe consequences such as "sudden cardiac arrest, convulsions, strokes, and death."[2] But cocaine affects more than just the user: it has been linked to "aggressive driving behavior and long-term developmental issues in babies when used during pregnancy."[3] In the United States, deaths related to cocaine "have increased every year since 2015, many driven by the fentanyl poisoning of cocaine users who did not know the cocaine was laced with fentanyl."[4] In fact, "[c]ocaine users are at a greater risk for drug poisoning from accidental ingestion of fentanyl because they do not have the tolerance of a habitual opioid user."[5] In 2023, there were 29,499 deaths from drug poisoning involving cocaine in the United States, an 85% increase since 2019.[6]

---

[1] U.S. Department of Justice Drug Enforcement Administration, *Drugs of Abuse, A DEA Resource Guide / 2024 Edition* at 65, available at https://www.dea.gov/sites/default/files/2024-12/2024-Drugs-of-Abuse-508.pdf (last visited July 8, 2026).
[2] *Id.* at 66.
[3] Genevieve Glatsky, *Cocaine is the Fastest-Growing Illegal Drug Worldwide. Here's Why.*, New York Times (Jun. 27, 2025), available at https://www.nytimes.com/2025/06/27/world/americas/cocaine-drug-market.html?unlocked_article_code=1.mU8.UL1f.X0NtJblJqqW-&smid=nytcore-ios-share&referringSource=articleShare (last visited July 8, 2026).
[4] *Id*.
[5] *Id*.
[6] National Institute on Drug Abuse, *Drug Overdose Deaths: Facts and Figures*, available at

While cocaine trafficking and abuse is a global problem, it affects the people of Massachusetts more than most. The Commonwealth confronts a severe substance abuse crisis, "with overdose deaths at 32.1 per 100,000 residents—55% above the national average."[7] In 2023, cocaine was present in 54% of opioid related deaths in the state.[8] For those that seek treatment for substance abuse before it is too late, costs are astronomical. The average residential treatment costs $56,725 per individual, while outpatient treatment costs $1,703.[9] For the 66,912 patients treated annually for drug rehabilitation in Massachusetts, that places an enormous burden on individuals, their families, the Commonwealth, and the Federal Government.[10] To address this problem, the United States has spent a total of $200.6 million on substance abuse treatment infrastructure in Massachusetts alone.[11]

Although Massachusetts is especially affected, cocaine use persists throughout the Northeast. A recent study showed that 2.61% of Massachusetts residents used cocaine in 2020 or 2021 – the fifth highest share in the United States.[12] Further opening the aperture reveals the regional nature of the cocaine use issue: Vermont had 2.99% (2nd nationally); Rhode Island had 2.67% (4th nationally); New York had 2.35% (8th nationally); Connecticut had 2.26% (9th nationally); Maine had 2.19% (12th nationally).[13] Thus, this offense not only has a significant impact on Massachusetts, but on the Northeast region of the United States.

---

https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates#Fig8 (last visited July 8, 2026).

[7] Well-Being Foundation of Mental Health, *Statistical Data on Drugs in Massachusetts*, available at https://www.wfmh.org/stats/massachusetts-drug-alcohol-statistics#statistical-data-on-drugs-in-massachusetts (last visited July 8, 2026).

[8] *Id*.

[9] Drug Abuse Statistics, *Cost of Rehab*, available at https://drugabusestatistics.org/cost-of-rehab/ ((last visited July 8, 2026). Statistics for cocaine-specific substance abuse treatment are not available, so this number encompasses substance abuse generally.

[10] *Id*.

[11] *Id*.

[12] Preeti Vankar*, U.S. Adults Prior Cocaine Use in 2021 and 2022 by State* (July 1, 2024), available at https://www.statista.com/statistics/806271/past-year-cocaine-use-us-adults/ (last visited July 8, 2026).

[13] *Id*.

While the quantitative facts related to drug use are concerning, the qualitative facts, which are often harder to capture, are just as significant. In this case, the Defendant, who himself struggled with cocaine addiction, should understand the impact that addiction can have on individuals, families and communities.

**3. Need for the Sentence Imposed**

As the discussion above regarding the nature of the offense makes clear, there is a compelling need to deter individuals who may be inclined to participate in drug trafficking — including by laundering the proceeds related to drug trafficking. A meaningful sentence of imprisonment is warranted to deter individuals from engaging in laundering funds obtained through the sale of illegal drugs, as the dangers associated with that conduct cannot be overstated. Especially in cases such as this—where the Defendant knew that he was handling large quantities of money related to drug sales—a significant sentence must be imposed. Further, the Defendant did not simply launder funds on one occasion. His conduct stretched across several years.

According to the Judiciary Sentencing Information ("JSIN") data, during the last five fiscal years (FY2021-2025), there were 173 defendants whose primary guideline was §2S1.1 with a final offense level of 25 and a criminal history category of I, after excluding defendants who received §5K1.1 substantial assistance. For the 167 defendants who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 45 months and the median length of imprisonment imposed was 48 months. PSR, ¶ 123. Here, the government's recommended sentence is higher than the JSIN data.

However, the JSIN data does not account for the context surrounding this particular case. Here, the Defendant himself struggled with cocaine addiction and should understand how laundering cocaine proceeds ultimately facilitates a cycle of drug distribution and abuse in

communities across Massachusetts. Further, given how cocaine impacts Massachusetts and the Northeast, and for the reasons mentioned below, a higher sentence which departs from the JSIN data is warranted.

The sentence recommended by the government would serve to deter both this defendant, as well as others. Individuals tempted to engage in laundering drug trafficking proceeds must understand that any involvement in such activity will have immediate and harsh consequences. In addition to general and specific deterrence, a significant sentence is necessary to promote respect for the law and to provide just punishment for this incredibly serious offense.

## III. Conclusion

For the reasons above, a within-guidelines sentence of 57 months is sufficient but not greater than necessary to meet the goals of sentencing. *See* 18 U.S.C. § 3553(a).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Brad A. Rocheville*
Brad A. Rocheville
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Brad A. Rocheville*
Brad A. Rocheville
Assistant United States Attorney

Date: August 1, 2026